### THE TOWN OF EXETER *vs.* THE TOWN OF STRATHAM.

The return of a warrant constitutes a part of the warning out of a pauper.
Where a law was repealed before the warrant was returned, or the year's residence completed, which was necessary to gain a settlement, the warning out was held to be valid, if conformable to the new law, though it was defective under the old law.
A general law, whose operations may change the existing settlements of paupers, is not unconstitutional.

THIS was assumpsit for relief furnished to *Clarissa Hall.*

It was admitted, that on the 8th of June, A. D. 1792, the father of the pauper had his settlement in Exeter. At that time, he and his family removed to Stratham, from which town, on the 2d of July, A. D. 1792, they were warned to depart, by a warrant, dated June 2d, 1792, and returned in March, A. D. 1793, but in which was no mention of the time they had resided in Stratham.

They returned to Exeter in September, 1794 ; but acquired no new settlement after their return.

Upon these facts, the parties agreed, that a verdict for a stipulated sum should be entered for the plaintiffs, or a gen-

---

* 12 John. 352, Maybee vs. Avery.

eral verdict for the defendants, as the court on consideration might think proper.

*J. Smith,* counsel for the plaintiffs.

*Mason,* for the defendants.

WOODBURY, J. The warning from Stratham was not valid by the laws which were in force previous to the 15th of September, 1792.(1)

At that time our present constitution and a statute, repealing our former laws upon the settlement of paupers,(2) and another, which enacted new provisions without requiring that " the time of the abode" of paupers in towns should be returned to the court of sessions, all went into operation.(3) This last statute continued in force till January, 1796 ;(4) and, therefore, as the pauper's settlement in this case is derivative, the effect of her father's residence and of the warning between June, A. D. 1792, and June, 1793, must be decided by the construction given to this last and the former statute taken in conjunction. The warrant was dated and served under the old law ; but returned under the new one. The year's residence, which was made necessary to gain a settlement by the 11th George III., commenced under one law and terminated under the other.

Neither the warning nor residence were completed before the repeal of the ancient statute.

This is obvious as to the residence, and can hardly be doubted as to the warning when we consider, that the return was made after the repeal, and was, by statute, indispensable to the validity of the proceedings.(5) It was, also, a part of the proceedings to constitute a sufficient warning because in the return, according to the language and reason of the statute, as well as the implication from the case of *Loudon vs. Deering,*(6) might have been inserted the very omission, that is urged against the validity of this warning. It would, therefore, seem decisive of the present case, that all rights unperfected, liabilities incomplete, and suits pending, if founded on existing statutes, must cease or be destroyed by a repeal of those statutes. 1 *N. H. Rep.* 62, 214, *with the authorities there cited.—Vide etiam.* 6 *Cra.*

*Exeter*
*vs.*
*Stratham.*

(1) 1 N. H. Rep. 13

(2) 1 N. H. Laws 477, 591.

(3) 1 N. H. Laws 356.
(4) 1 N. H. Laws 362.

(5) 1 N. H. Rep. 263, Bow vs. Nottingham.

(6) 1 N. H. Rep. 13.

Exeter
*vs.*
Stratham.

203, 329.—7 *ditto* 632.—1 *ditto* 103–4.—1 *Bl. Rep.* 451, *Millar's case.*—4 *Dall.* 372.—1 *Binn.* 601.—*Burr.* 2460.

For it then follows, that as neither the warning nor residence were perfected under the old law, the settlement cannot be decided by that law, but must depend on the new law, which existed at the time the warning was returned and the year's residence finished.

This conclusion does not militate with the following cases, that seem to bear upon the question. For in *Gilmore vs. Shooter*,(1) the writing, held valid after the passage of the statute of frauds, was executed before the statute passed. In *Faulkland vs. Stanion*(2) the bond held void for want of a stamp was also executed, before the statute requiring a stamp was repealed. In *Whitman vs Hapgood et al.*(3) the advancement to a child held to he valid was made before the statute in existence at the trial of the cause; and in the *Springfield Bank vs. Merrick et al.*(4) the contract was completed under laws, that rendered it void, though those la w were repealed before a suit was commenced.

(1) 2 Mod. 310.

(2) 12 Mod. 400.

(3) 10 Mass. Rep. 437.

(4) 14 Mass. Rep. 322.

Again, the new law is broad enough in its language to embrace cases of this description; and such a construction of it conflicts with no established principles.

" Every person, who *hath* lived one year," &c. " shall be " deemed an inhabitant," unless " before the expiration " thereof," " warned to depart," &c.(1)

(5) 1 N. H. Laws 356.

These words are perfectly appropriate to residences and warnings then commenced, but unfinished. They require however that the warning shall be finished before " the expiration" of a year from the commencement of the residence, and in the present case it was thus finished; but in a manner conformable to the new, rather than the old law.

Hence by the new law the warning was good, and to judge of its validity by the new law is to judge by the only law in being, when the warning was completed; and is not giving to the new law a retrospective operation. It is not to extend the new law to any warnings or residences, then completed, or to affect any rights or liabilities then perfected.

But if it did so extend the law, we can discover no objection to this construction ; as the law is general in its application, does not impair private interests and relates to a subject altogether of public concern.(1)

We are yet to learn, that the legislative power, thus exercised, is either dangerous or unconstitutional. That the whole system of our pauper laws cannot, as sound policy seems to dictate, be reformed or abolished. That the alarming increase of litigation as to settlements cannot be obviated by throwing the whole expenses of maintenance on the state or the respective counties, or on the towns where paupers happen to be when needing relief. That these expenses cannot be lessened by providing public farms and work-shops for labor. Or, if this fail, that the " valiant beggar" cannot be left to work or suffer, and the helpless confided to the affectionate charities of kindred, aided, as they always will be in proper cases, by the liberal sympathies of that divine principle of mercy, which warms the hearts of all, and which proves so signal a blessing to both givers and receivers.

*Let a general verdict be entered for the defendants.*

(1) 1 N. H. Rep. 111, 214, and the State vs. Hampton, ante.